381 A.2d 846

Kingdon W. SWAYNE, Treasurer of the County of Bucks, Commonwealth of Pennsylvania ex rel. Robert D. CULP, assignee of Mary Prechtel, Executrix under the Will of Enola J. Van Horn, Petitioner-Appellant,

v.

Richard LODEN, Respondent-Appellee.

Supreme Court of Pennsylvania.

Decided Oct. 28, 1977.

Rehearing Denied Feb. 1, 1978.

OPINION OF THE COURT

PER CURIAM.

Appellee, Richard Loden, purchased certain real property at a treasurer's tax sale in Bucks County. In connection with this transaction, he gave to the County Treasurer, Kingdon W. Swayne, a so-called "surplus bond" as security for the unpaid balance of the purchase price. Appellant

Robert D. Culp is the assignee of that bond and, although the County Treasurer is the nominal payee, it is Culp who is entitled to receive the monies promised by the bond.

Within 5 years from delivery of the sheriff's deed to Loden, appellant Culp caused judgment to be entered on the "surplus bond" against Loden and, the monies remaining unpaid, caused a writ of execution to issue attaching Loden's personal property. Loden objected, arguing that the only property which could be sold at execution was the very piece of land he had purchased at the treasurer's sale some years before. In support of his position, Loden relied upon the Act of May 29, 1931, P.L. 280, § 13, 72 P.S. § 5971m. The Court of Common Pleas of Bucks County stayed execution on that ground, and the Commonwealth Court unanimously affirmed. *Swayne v. Loden*, 27 Pa.Cmwlth. 221, 365 A.2d 1355 (1976). We are asked to review.

The issue presented is one of statutory interpretation and arises from the following language:

"After any sale of property or lands for delinquent taxes has been confirmed by the court, as aforesaid, it shall be the duty of the purchaser or purchasers, where the bid exceeds the taxes, interest, and costs, as aforesaid, to make and execute to the said treasurer, for the use of the persons entitled, a bond for the surplus money that may remain after satisfying and paying all the taxes, interest, and costs, as aforesaid, with warrant of attorney to confess judgment annexed thereto, and it shall be the duty of said treasurer to forthwith file said bond in the office of the prothonotary of the proper county, at the number and terms where said report and return is filed; and the surplus bond filed as aforesaid, from the time of the date of the deed for property thus sold, shall bind, as effectually and in like manner as judgments, the land by said treasurer sold into whose hands or possession it may come; and the owners of said lands, at the time of sale, their heirs, assigns or other legal representatives, may, in not less than two years or more than five years after confirmation of such sale, cause judgment to be entered in said

court upon said bond, in the name of said treasurer, for the use of said owners, their heirs, assigns or legal representatives (as the case may be); and in case the moneys mentioned in said bonds, with legal interest thereon, be not paid within thirty days after judgment thereon, *execution may issue against the property therein before sold, and said property be sold upon writ of fieri facias, without condemnation or inquisition or the benefit of any exemption laws.*" Section 13 of the Act of 1931, 72 P.S. § 5971m (emphasis supplied).

It is the position of appellee Loden that the italicized language of Section 13 serves as a limitation on the property which can be levied upon by execution process and sold to satisfy a judgment entered on the "surplus bond." It is the position of the appellant Culp that the purpose of the Legislature in enacting this section of the Act of 1931 was to add to but not supplant the normally applicable law, and that the lien created by the statute is an additional but not an exclusive remedy.

More than one hundred years ago this Court decided the question here presented, *Thudium v. Deardorf*, 3 Pa. 90 (1846). The statutory language involved in that decision originated with Section 4 of the Act of 1804, formerly 72 P.S. § 5893 (now superseded), and was word-for-word the same as the section of the Act of 1931 set forth above with one exception: the concluding phrase of the Act of 1804 was " . . ., execution shall issue forthwith for the recovery of same," while the concluding language of the Act of 1931 is " . . ., execution *may* issue against the property therein before sold, and said property be sold upon writ of *fieri facias*, without condemnation or inquisition or the benefit of any exemption laws." In *Thudium v. Deardorf* judgment was taken on a "surplus bond" more than 5 years after delivery of the sheriff's deed, and a writ of *fieri facias* was sued out to attach personal property of the maker of the bond. As in the case here, the argument of the bondmaker was that the remedies available to enforce the bond were exclusively those set forth in the statute, and the statute did

not authorize suit beyond 5 years. And as is the case here, the judgment creditor argued that the statute was in addition to and not in derogation of the normal common law remedies available to a party entitled to seek enforcement of a judgment on a written promise to pay money.

This Court unanimously rejected the bondmaker's argument and unequivocally held that the lien and the procedure for its enforcement were in addition to the existing common law, and that judgment could be taken after 5 years but before the running of the statute of limitations applicable to formal promises to pay money and a writ of *fieri facias* sued out against personal property of the judgment debtor.

It is clear to us that Section 13 of the Act of 1931 was copied by the Legislature from Section 4 of the Act of 1804 and embodies the same legislative policy. The only difference between the two statutes—the language of the concluding phrases—does not represent a change in legislative intent. At the time of enactment of Section 4 of 1804, a judgment creditor could levy on either personal or real property of the judgment debtor, as he might choose. At the time of enactment of Section 13 of the Act of 1931, however, the judgment creditor was compelled to seek first satisfaction by judicial sale of the personal property of the judgment debtor, and could only thereafter resort to the real property of the debtor. Even then, however, he could not cause the real property to be exposed to sale (by writ of *venditioni exponas,* or "vendex") if an inquisition first determined that the rents and profits of the land, if turned over to the judgment creditor, were sufficient to satisfy the judgment. See former 12 P.S. § 2381 (writ of *fieri facias* unavailable against real property unless sheriff cannot find sufficient personal property); former 12 P.S. §§ 2382–2388 (conduct of the inquisition); former 12 P.S. §§ 2441–2449 (proceedings on *venditioni exponas* ). Absent the change in the concluding phrase, Section 13 of the Act of 1931 would have been insufficient to enable a judgment creditor on a "surplus bond" to attach and sell the land purchased by the judgment debtor at the treasurer's sale: he would first have

to exhaust personal property, an inquisition would have to determine that profits and rents in 7 years would not satisfy the judgment, and even then the land might be exempt from execution under some statutory provision governing exemptions. The additional language of the 1931 statute, therefore, was required to give to the judgment creditor on a "surplus bond" precisely the same rights as were given to a judgment creditor under Section 4 of the Act of 1804.

We are satisfied that *Thudium v. Deardorf* was correctly decided in 1846 and remains the law today. It follows that the two statutory provisions above discussed (from the Act of 1804 and the Act of 1931) are in addition to and not limitations on ordinary remedies available for enforcement of written promises to pay money. We therefore see no reason why appellant Culp, a judgment creditor on a "surplus bond," should not be entitled to proceed either under Section 13 of 1931 or under any other Pennsylvania law governing the enforcement of money judgments.

Accordingly, the petition for allowance of appeal is granted, the order of the Commonwealth Court is vacated, the order of the court of common pleas which stayed execution sale of Loden's personal property on Culp's writ of execution is vacated, and the case remanded to the court of common pleas for further proceedings consistent with this opinion.